UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO: 4:15-CV-00064-BR

| | |
|---|---|
| DONNIE MONTÉ JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) ORDER |
| v. | ) |
| | ) |
| CITY OF GREENVILLE *et al.*, | ) |
| | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on defendants City of Greenville and Greenville Police Department Officer Marcos Uvalle's motion to dismiss, (DE # 12), which was converted to a motion for summary judgment by order of this court on 2 July 2015. (DE # 19.) Also before the court is defendants' motion to strike. (DE # 21.) The issues raised have been fully briefed and are now ripe for disposition.

## I. BACKGROUND

This case arises out of the execution of a search warrant at an apartment located on a property operated by the Housing Authority of Greenville ("Housing Authority"). On the morning of 19 April 2012, Officer CW Salter of the Greenville Police Department applied to a state magistrate for a warrant to search an apartment located at 200 A East Roundtree Drive in Greenville, North Carolina. (Ex. B, DE # 13-1, at 5-7.) In the application, Officer Salter indicated that he had received information from a reliable confidential informant that an African-American man named "Tim" was selling drugs from that address. (Id. at 6.) Erica Spain was the authorized tenant of the apartment. (Pl.'s Resp., DE # 20-1, at 3.)

On 19 April 2012, at approximately 10:08 a.m., the search warrant was issued. (Ex. A, DE # 13-1, at 4.) The search warrant did not specify the manner of entry. (Id.) Prior to executing the warrant, Officer Salter and Officer Uvalle spoke to the Director of the Housing Authority, who provided the officers with a key to make entry due to concern about possible property damage to a door when executing the warrant. (Uvalle Declr., DE # 13-1, at 2.)

The search warrant was executed later that same morning. (Id. at 1-2.) The parties agree that the officers entered the apartment with a key provided by the Housing Authority. However, they describe the details of the entry and search of the apartment in different terms.

As Officer Uvalle describes the incident in his affidavit, when he and Officer Salter arrived at 200 A East Roundtree Drive, they observed an SUV parked outside of the apartment. (Id. at 2.) As the officers approached the SUV, they observed a woman and two children sitting inside the vehicle. (Id.) The woman informed the officers that she was waiting for her sister. (Id.) Thereafter, Officers Uvalle and Salter approached the door of the apartment and knocked and announced. (Id.) While waiting at the door, Officer Uvalle observed the woman in the SUV texting on a cell phone. (Id.) It was determined that the woman was alerting the occupants of the apartment that law enforcement was at the door. (Id.) Based on these circumstances, the officers decided entry would be made using the master key. (Id.)

According to Officer Uvalle, upon entering the apartment, he encountered two women who were present in the living room. (Id.) Officer Uvalle determined that one of the women was the sister of the woman in the SUV, and she was cleared to leave. (Id.) During the execution of the warrant, Officer Salter attempted to gain entry to a locked bathroom door. (Id.) Officer Salter eventually kicked in the door to the bathroom, wherein he discovered plaintiff standing with a Lawry's shaker bottle in his hand. (Id.) Marijuana residue was discovered in the

bottle.  (Id.)  Additionally, a K-9 unit that assisted in the execution of the search warrant alerted on a dresser in which a plastic bag containing marijuana was located.  (Id.)

As plaintiff describes the incident, Officer Uvalle and another unidentified officer entered the apartment by use of a master key without first knocking and announcing their presence. (Compl., DE # 5, at 2-3.)  Upon entering the apartment, the officers detained everyone inside and immediately started searching the premises.  (Id. at 3.)  Plaintiff provides few details regarding his encounter with the officers in the bathroom.  Plaintiff, however, asserts that he did not flush the contents of the shaker bottle down the toilet at any point during the search.  (Pl.'s Resp., DE # 20, at 5.)  He further asserts that no drugs or drug paraphernalia were found during the search of the apartment.  (Compl., DE # 5, at 4.)

Following the execution of the search warrant, plaintiff was arrested and charged with possession of marijuana, possession of drug paraphernalia, and destruction of evidence.  (Uvalle Declr., DE # 13-1, at 3.)  Plaintiff was subsequently taken to the Pitt County Detention Center. (Id.)  The next day, on 20 April 2012, plaintiff appeared before a state magistrate, who conducted a hearing, found there was probable cause for plaintiff's continued detention, and placed plaintiff under a $5,000 secured bond.  (Id.; DE # 13-2.)  The charges against plaintiff were later dismissed.  (See DE ## 13-3, 13-4.)

On 20 April 2015, plaintiff filed this *pro se* action against "the City of Greenville, Officer Uvalle, and other unknown officers who responded to the residence of Erica Spain[.]"  (Compl., DE # 5, at 2.)  Plaintiff seeks relief under 42 U.S.C. § 1983 for unlawful search, false arrest, and unlawful detention in connection with the execution of the search warrant on Spain's apartment. (Id. at 2-4.)  He further asserts that defendants' constitutional violations resulted in "emotional

distress and humiliation" and "loss of civil liberties."  (Id. at 4.)  Plaintiff seeks damages and attorney's fees.  (Id.)

Defendants filed a motion to dismiss on 20 May 2015.  (DE # 12.).  The motion was converted to a motion for summary judgment on 2 July 2015.  (DE # 19.)  Plaintiff filed a response to the motion for summary judgment on 3 August 2015.  (DE # 20.)  Defendants filed a reply on 11 August 2015.  (DE # 25.)

## II. DISCUSSION

### A. Motion to Strike

Defendants move to strike "affidavits,' statements, and documents attached to Plaintiff's Response to Defendants' Motion for Summary Judgment."  (DE # 21, at 1.)   Defendants argue that the "statements submitted as affidavits" should be stricken because they are "conclusory" and "not based on personal knowledge[.]"  (Id.)  They further contend that the documents attached to plaintiff's response are "either not relevant or otherwise admissible."  (Id. at 2.)

Federal Rule of Civil Procedure 56(c)(4) provides that affidavits supporting a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  In his response, plaintiff states that he has included "affidavits" and "declarations" to support his claims. (DE #20, at 2.)  However, plaintiff has failed to submit any such documents for consideration by the court.  None of the statements or letters submitted by plaintiff are identified as affidavits or declarations.  Nor are any of these documents signed, sworn, and notarized.  Therefore, the court will not consider any of these submissions as affidavits but will not strike them from the record.

## B. Motion for Summary Judgment

### 1. Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012) (citations omitted). In considering a motion for summary judgment, the court views the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant meets this burden, the nonmoving party must then "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). To defeat summary judgment, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013) (citations omitted). Rather, the nonmoving party must support its assertions by citing to particular facts in the record, such as affidavits, depositions, answers to interrogatories, and admissions on file. Fed R. Civ. P. 56(c)(1); Celotex Corp., 477 U.S. at 324.

### 2. Federal Claims

The court will first analyze defendants' motion for summary judgment as it pertains to plaintiff's federal claims. Plaintiff bases his § 1983 claims against the individual officers on the

5

Fourth and Fourteenth Amendments, which he claims the officers violated by conducting an unlawful search and by unlawfully arresting and detaining him. Plaintiff also argues that there should be § 1983 liability against the City of Greenville based upon its customs and practices. The court will consider each of these arguments in turn.

    **a. Unreasonable Search Claim**

Plaintiff makes several claims concerning entry by law enforcement into Spain's apartment. Plaintiff first alleges that "[d]efendant[s] applied for [a] probable cause search warrant under false pretenses and therefore had no probable cause to search the premises of Erica Spain[.]" (Compl, DE # 5, at 3.) Next, plaintiff claims that Officer Uvalle and other unknown officers who took part in executing the search warrant unlawfully entered Spain's apartment with a key provided by the Housing Authority. (Id.) Finally, plaintiff alleges that that the City of Greenville maintained "a pervasive custom of entering civilian's homes that are not terrorists, with a key and failing to identify themselves as officers of the Law prior, during, or after entering." (Id. at 2-3.)

In support of their motion for summary judgment, defendants argue primarily that plaintiff does not have standing to bring an unreasonable search claim against the City of Greenville or any of its individual officers. In order to have standing to contest a search on Fourth Amendment grounds, an individual must demonstrate that he has a "legitimate expectation of privacy" in the place searched. Rakas v. Illinois, 439 U.S. 128, 143 (1978). Whether an expectation of privacy is "legitimate" depends on two factors: (1) whether the person has a subjective expectation of privacy in the place to be searched, and (2) whether the expectation of privacy is objectively reasonable. United Sates v. Horowitz, 806 F.2d 1222, 1225 (4th Cir. 1986). A person's claim that he was legitimately on the premises at the time of the

6

Case 4:15-cv-00064-BR   Document 26   Filed 12/03/15   Page 6 of 16

search is an insufficient legal basis by itself for the court to initiate review of the propriety of the search. Minnesota v. Olson, 495 U.S. 91, 96-97 (1990). Although an overnight guest has a legitimate expectation of privacy in the host's residence, Minnesota v. Olson, 495 U.S. 91, 96 (1990), a "casual, transient visitor," United States v. McNeal, 955 F.2d 1067, 1070 (6th Cir. 1992), does not have a reasonable expectation of privacy in the place to be searched.

To support their argument that plaintiff lacks standing, defendants point out that plaintiff was "banned and subject to arrest for Trespass" by the Housing Authority. (Defs.' Reply, DE # 25, at 5.) Looking at the record, it appears that plaintiff was banned from Housing Authority property sometime in May 2012, approximately one month after the search at issue in this matter. (See DE # 20-1, at 19.) Because the ban was not in effect at the time of the search of Spain's apartment, the court finds this fact is irrelevant to its determination of whether plaintiff has standing to bring an unreasonable search claim.

Plaintiff does admit that "the residence officers unlawfully entered was not the living address of the Plaintiff." (Pl.'s Resp., DE # 20, at 3.) Nonetheless, plaintiff asserts that he was involved in a relationship with Spain, who was the renter of the apartment at the time of the search. Even accepting this allegation as true, plaintiff presents no evidence that he ever, much less on 18 April 2012, spent the night at Spain's apartment. Moreover, there is no evidence in the record demonstrating that plaintiff was a regular visitor at the apartment. Therefore, plaintiff has not met his burden of demonstrating that he possessed a reasonable expectation of privacy in Spain's apartment at the time of the search. Accordingly, the court finds that plaintiff lacks standing to challenge the search warrant or the search in this case.

Furthermore, even if plaintiff did have standing to bring an unreasonable search claim, the court finds that plaintiff has failed to support any such claim against either the City of Greenville or any of the individual officers who took part in the search.

### i. Liability of the City of Greenville

Plaintiff alleges that his constitutional rights were violated as a result of the City of Greenville's custom of allowing its officers to enter the homes of private citizens unannounced with a key. (Compl., DE # 5, at 7-8.) A plaintiff may establish municipal liability if a violation of a federal right is the result of a municipal policy or custom. Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987) (citing Monell v. Dept. of Social Servs. of City of New York, 436 U.S. 658, 694 (1978)). A municipal custom may arise if "a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (quoting Monell, 436 U.S. at 691). It is well established that a single incident of unconstitutional activity is generally insufficient to prove the existence of a municipal custom or policy. Semple v. City of Moundsville, 195 F.3d 708, 713-14 (4th Cir. 1999).

Plaintiff contends that the existence of a municipal custom may be inferred from the affidavit of Housing Authority official Michael Best, which confirms that Officer Uvalle entered Spain's apartment with a master key. (Pl.'s Resp., DE # 20-1, at 2.) Plaintiff, however, has not included Best's affidavit with any of his filings. Moreover, defendants do not dispute that Officer Uvalle entered Spain's apartment with a key provided by the Housing Authority. Plaintiff also bases his argument that a custom existed upon the fact that several residents of Greenville Public Housing signed a petition stating their opposition to law enforcement entering into their homes by the use of a key. (DE # 20-1, at 23.) This petition does not, in and of itself,

8

demonstrate the existence of a custom. Although the petition states that residents oppose this method of entry, it does not indicate that it is in response to more than one incident of law enforcement engaging in this conduct. Because plaintiff fails to offer any specific examples of law enforcement entering the apartment of a public housing resident besides his own experience on 19 April 2012, there is nothing in the record to suggest that the search of Spain's apartment was the result of a "persistent and widespread" practice such that the City of Grenville should be held liable. See Monell, 436 U.S. at 691.

### ii. Liability of Individual Officers

In addition to his claim against the City of Greenville, plaintiff also brings claims against Officer Uvalle and other unknown officers, which are founded on the validity of the search warrant and lawfulness of the search.

The court first considers plaintiff's claim that the search warrant was obtained under false pretenses. An officer "contravenes the Fourth Amendment when he procures a search warrant through the use of false statements, whereby a magistrate would not have otherwise found probable cause." Unus v. Kane, 565 F.3d 103, 124 (4th Cir. 2009) (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)). The party challenging the warrant must make a "substantial preliminary showing that the false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Franks, at 155-56. Claims of negligence or innocent mistake do not satisfy the standard for reckless disregard. United States v. Tate, 524 F.3d 449, 454 (4th Cir. 2008).

Plaintiff appears to argue the search warrant was invalid because it contained unsubstantiated information regarding the name and physical description of the individual suspected of storing drugs in Spain's apartment. Plaintiff notes that the search warrant and

9

attached affidavit identified the suspect as "Tim," an African-American male with a height of 5'06" and a weight between 140-160 pounds.[1]  Because there is no evidence that a man with this name or matching this description resided in Spain's apartment, plaintiff claims that Officer Salter may have been given the "wrong" information by the confidential informant.  (Pl.'s Resp., DE # 15, at 3.)

Here, plaintiff does not allege that Officer Salter intentionally misrepresented facts to the magistrate judge.  See Franks, 438 U.S. at 171 ("The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.")  Moreover, even if the alleged inaccuracies regarding "Tim" were to be excluded from the warrant, the remainder of the warrant affidavit still identified 200 A East Roundtree Drive as the location of a suspected "drug house," and established that a confidential informant had made several controlled purchases of marijuana directly in front of that address.  See United States v. Clyburn, 24 F.3d 613, 618 (4th Cir. 1994) (holding that an informant's controlled buy of crack cocaine constituted probable cause for issuance of a search warrant).  Consequently, plaintiff has failed to show that the warrant to search Spain's apartment was not supported by probable cause.

Next, the court considers plaintiff's claim that the search warrant was executed in an unreasonable manner because the officers failed to knock and announce before entering Spain's apartment.  The Fourth Amendment requires officers to knock and announce their presence, and wait a reasonable period of time, prior to entering a dwelling.  Richards v. Wisconsin, 520 U.S. 385, 387 (1997); see also 18 U.S.C. § 3109 (codifying knock and announce requirement with respect to federal officers).  The knock and announce requirement may be excused, however, by

---

[1] The arrest report lists plaintiff at a height of 5'11" and a weight of 155 pounds on the date of the search.  (See DE # 20-1, at 8.)

10

exigent circumstances.  United States v. Grogins, 163 F.3d 795, 797 (4th Cir. 1998).  "In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence."  Richards, 520 U.S. at 1421.  "Whether exigent circumstances existed at the time of the entry, and whether the degree of the exigency was sufficient to justify the extent of the noncompliance, is determined by an analysis of the facts of each case.  United States v. Kennedy, 32 F.3d 876, 882 (4th Cir. 1994).

     In support of their motion for summary judgment, defendants mainly rely upon the recounting of events by Officer Uvalle that he knocked and announced before entering Spain's residence by use of a master key.  Plaintiff asserts that the officers failed to knock and announce their presence before entering Spain's apartment with a key.  However, plaintiff does not dispute the facts found in Officer Uvalle's affidavit documenting his actions prior to entering Spain's apartment.  In his affidavit, Officer Uvalle states that prior to executing the search warrant, he and Officer Salter encountered a woman sitting in an SUV outside of the apartment who he believed was alerting the occupants of the apartment that law enforcement was at the door.  Given that the search warrant identified the apartment as a suspected drug house, an objectively reasonable officer would have been concerned about the possibility of the destruction of evidence.  Thus, even assuming the officers failed to knock and announce, defendants point to undisputed facts justifying the method of entry employed.

### b. Unreasonable Seizure

Plaintiff's claims for false arrest and unlawful detention are directed against Officer Uvalle and other unknown officers who took part in his arrest. Defendants move for summary judgment on a number of bases, including failure to serve and qualified immunity.

### i. Unknown Officers

Initially, defendants argue that plaintiff's claims against the unknown officers must be dismissed because plaintiff has failed to conduct a good faith effort to discern the names of these defendants and notify them of the lawsuit. Plaintiff does not respond to this argument in any of his filings. Rule 4(m) requires the court to dismiss an action against a defendant who is not served within 120 days after the complaint is filed. Fed. R. Civ. P. 4(m). However, Rule 4(m) further provides that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Id. There is no indication in the record that plaintiff has made an effort to discover the identities and addresses of the unknown officers. Thus, the court dismisses plaintiff's claims against these unnamed and unserved officers without prejudice.

### ii. Officer Uvalle

With respect to Officer Uvalle, defendants raise the defense of qualified immunity in response to plaintiff's allegations that he was subjected to false arrest and unlawful detention. The defense of qualified immunity "shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." Unus, 565 F.3d at 123. "An officer is protected by qualified immunity unless he is shown to have (1) violated clearly established law (2) that a reasonable officer should have known." Id. "However, [the court] need not reach both prongs of the analysis." Raub v. Campbell, 785 F.3d 876, 880-81 (4th Cir. 2015).

The court first considers plaintiff's claim of false arrest, and whether plaintiff sufficiently shows that Officer Uvalle violated his constitutional rights. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "Probable cause exists when the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." Wadkins v. Arnold, 214 F.3d 535, 539 (4th Cir. 2000). "Probable cause requires more than 'bare suspicion' but requires less than evidence necessary to convict." Porterfield v. Lott, 146 F.3d 563, 569 (4th Cir. 1998). In order to prove the absence of probable cause, plaintiff must come forward with evidence that made it unjustifiable for a reasonable officer to conclude he was involved in the charged offense. Brown v. Gilmore, 278 F.3d 362, 368 (4th Cir. 2002).

Following the execution of the search warrant, plaintiff was arrested for possession of marijuana, possession of drug paraphernalia, and destruction of evidence. Defendants base their argument that probable cause existed upon Officer Uvalle's affidavit, in which he states that a search of the apartment revealed "a plastic bag with marijuana residue" and "marijuana residue in [a Lawry's shaker] bottle." (DE # 13-1, at 2.) In response to this evidence, plaintiff points the unsworn allegations of his complaint, wherein he asserts that he was arrested "despite of [sic] no drugs being found on the premises." (Compl., DE # 5, at 4.) Such allegations are insufficient to defeat summary judgment. See Harris v. Atlantic-Richfield Co., 469 F.Supp. 759, 762 n.1 (E.D.N.C. 1978) ("[I]t is elementary that a party opposing summary judgment may not rely on the unsworn allegations of his complaint[.]").

Even if the court were to accept plaintiff's version of events as true, there are other facts which might have resulted in a belief that probable cause existed to arrest plaintiff for destruction of evidence. See N.C.G.S. § 14-221.1. (stating "any person who alters, destroys, or steals any evidence relevant to any criminal offense or court proceeding shall be punished as a Class I felon"). First, officers conducted an investigation that revealed 200 A East Roundtree Drive to be a drug house. Additionally, it is undisputed that prior to executing the search warrant, a woman, who was parked in a SUV outside of Spain's apartment, informed Officer Uvalle that she was waiting for her sister who was inside of the apartment. It is also undisputed that Officer Uvalle observed the woman texting on her cell phone as he approached the apartment, and believed that she was alerting the occupants of the apartment that law enforcement was approaching. Plaintiff argues that his conduct was not consistent with the destruction of evidence because he was simply using the bathroom and did not attempt to flush any drugs down the toilet. However, plaintiff does not dispute that in the course of the search of Spain's apartment, he was discovered behind a locked bathroom door with shaker can in his hand. In such a context, it was objectively reasonable for Officer Uvalle to believe that plaintiff "had been able to dispose of the evidence" while inside the locked bathroom. (Uvalle Declr., DE # 13-1, at 2.)

Having concluded that there was probable cause to arrest for at least one charge, the court need not determine whether the officers also had probable cause to arrest plaintiff for the other charges. See Barry v. Fowler, 902 F.2d 770, 773 n.5 (9th Cir. 1990) (holding that an officer must have probable cause for at least one charge for an arrest to withstand a Fourth Amendment challenge); Edwards v. City of Philadelphia, 860 F.2d 568, 575–576 (3d Cir. 1988) (same) (citing Linn v. Garcia, 531 F.2d 855, 862 (8th Cir. 1976)). For purposes of the Fourth

Amendment, an arrest on multiple charges is a "single transaction," and probable cause will be found to exist, so long as it existed for at least one offense. See Calusinski v. Kruger, 24 F.3d 931, 935 (7th Cir. 1994) (holding that at the time of the arrest police officers need probable cause that a crime has been committed, not that the defendant committed all of the crimes for which he or she is later charged). Therefore, plaintiff false arrest claim against Officer Uvalle fails.

The court next assesses plaintiff's claim of unlawful detention. The Fourth Amendment "requires that arrests be made based upon probable cause and that a neutral and detached judicial officer evaluate probable cause as a condition of significant pretrial restraint of liberty." Brooks v. City of Winston–Salem, N.C., 85 F.3d 178, 184 (4th Cir. 1996) (citation and internal quotation marks omitted). Once a warrantless arrest has been judged reasonable through a probable cause determination made by a neutral magistrate, the continuing pretrial seizure of a criminal defendant is reasonable. Id. Plaintiff does not dispute that a neutral, detached magistrate determined there was probable cause to support plaintiff's continued detention following his warrantless arrest. Consequently, plaintiff's claim does not allege the deprivation of any right guaranteed by the Fourth Amendment, and his claim of unlawful detention must be dismissed.

**3. State Law Claim**

It is somewhat unclear whether plaintiff also seeks to assert a state law tort claim as a part of this action. To the extent plaintiff has claimed emotional distress, the court finds that plaintiff has failed to allege any facts indicating that he sustained the type of injuries necessary to assert such a claim. To establish a claim for either intentional or negligent infliction of emotional distress, a complaint must allege "severe emotional distress." See Sorrells v. M.Y.B. Hospitality Ventures of Asheville, 435 S.E.2d 320, 321-22 ( N.C. 1993) (stating negligent infliction of emotional distress requires "severe emotional distress"); Dickens v. Puryear, 276 S.E.2d 325,

335 (N.C. 1981) (holding that intentional infliction of emotional distress requires "severe emotional distress to another"). Although plaintiff states in a conclusory fashion that he suffered "emotional distress and humiliation," plaintiff does not describe any emotional distress he suffered to be "severe." Plaintiff does allege that he experienced "humiliation" as a result of defendants' actions. However, North Carolina does not recognize humiliation as a form of severe emotional distress. See Waddie v. Sparks, 414 S.E.2d 22, 27 (N.C. 1992). Accordingly, the court finds that defendants are also entitled to summary judgment to the extent plaintiff has alleged an emotional distress claim under state law.

### III. CONCLUSION

For the reasons stated herein, defendants' motion to strike, (DE # 21), is DENIED. Defendants' motion for summary judgment, (DE # 12), is GRANTED. The Clerk is DIRECTED to enter judgment in favor of defendants and close this case.

This 3 December 2015.

_____
W. Earl Britt
Senior U.S. District Judge